[Civ. No. 5119.   Second Appellate District.   Division One.—March 6, 1928.]

REX B. MURRAY, Appellant, v. SOUTHERN PACIFIC COMPANY, Respondent.

Glensor, Clewe, Van Dine & Turcotte for Appellant.

W. I. Gilbert for Respondent.

WOOD (W. J.), J., *pro tem.*—Plaintiff delivered 35 cows to defendant, a common carrier, on February 20, 1923, at Gordon, California, for shipment to Hynes, California. He alleges that the stock was badly damaged by the negligence of the defendant, first, in not properly sanding the floor of the car containing the cows, and, second, in causing the car to be violently jerked, and seeks damages for the injuries sustained. The trial court granted defendant's motion for a nonsuit at the close of plaintiff's evidence and the plaintiff appeals from the judgment rendered upon the granting of the motion.

Defendant contends that negligence on its part was not shown. Plaintiff was sworn as a witness and testified that he accompanied the stock on the freight train over the Tehachapi Pass and that he examined the floor of the car in which the cattle were shipped; that there was "practically no sand at all in the car. There wasn't a fraction of an inch in there. Two or three handfuls is all. You could see the boards through the sand." He further testified that he paid to defendant the customary charge for sanding. It was shown in evidence that defendant's published rules and regulations governing the transportation of livestock, filed with the Railroad Commission, required that the floor of the car "must be covered with sand, cinders or other suitable material to a depth of not less than two and one-half inches." The regulations further provided that "since the object of bedding cars is to furnish proper footing for the stock to avoid injury agents must use great care to see that cars are properly bedded."

To establish his claim that the car was violently jerked, plaintiff testified that while he was asleep in a bunk in the caboose, the train was suddenly stopped with a "terrible crash" while traveling at 25 or 30 miles per hour. Plaintiff was thrown from his bunk to the floor. He said: "The train broke at that time . . . It took about one hour, I should

judge, to repair the train.'' A number of other jerks were described by the witness. He testified: ''Q. Describe the jerks that occurred. A. I would be sitting in the middle of the caboose, I mean half way between one end and half way between the other, and we were clattering along down there and the train would come to such an abrupt stop it shot me clear into the end of the caboose against the door. . . . Q. How often did that occur during that part of the transportation? A. I didn't give it a chance to occur again. I got hold of something and hung onto it. . . . Q. Now describe to the court, if you can, the nature and character of the jerks which you have mentioned between the point of the first and second break. A. Well, the nature of them would be this: The train would be traveling along at a fair rate of speed and all of a sudden the brakes were applied for some cause or other, I don't know. Q. And what would happen when the brakes were applied? A. The train would come to a stop or jerk.''

When they were received by defendant the cows were in good condition. Upon their arrival in Los Angeles they were shown to be in bad condition. A veterinary surgeon who examined the stock testified that all but one of the animals were injured. Four of them had broken ribs and one had a five-inch rupture. Most of them were bruised and ''skinned,'' and many walked ''as if in great pain.'' They were physically unfit to complete the journey by rail and plaintiff transported them from Los Angeles to Hynes by motor-truck.

From the foregoing it is apparent that plaintiff has sustained the burden resting upon him of showing negligence on the part of defendant and that his stock was damaged. No rule of law is more firmly established than that upon motions for nonsuit all of the evidence in favor of plaintiff must be considered as true, together with every inference favorable to plaintiff and fairly deducible from the evidence received. Any evidence in conflict with that favorable to plaintiff may be disregarded. (*Davis* v. *Crump*, 162 Cal. 513 [123 Pac. 294].) By receiving compensation for so doing defendant undertook to see that the car was properly sanded; by its own regulations it declared in effect that the sanding was necessary

for the proper hauling of cattle and set forth the minimum of material to be used; and by the testimony of plaintiff it was shown that the sanding was not done properly or in the manner required by the regulations. In the matter of the violent jerking of the car the doctrine of *res ipsa loquitur* applies. The testimony of plaintiff was sufficient to place upon defendant the burden of showing freedom from negligence in the operation of the train.

Defendant contends that, notwithstanding the injuries sustained by the cattle, it is established that plaintiff did not have a right to recover judgment against defendant since he suffered no financial loss. Counsel rests this contention upon the fact that during the trial he amended his answer by attaching thereto a complete copy of the bill of lading, the contract of carriage between plaintiff and defendant, in which, according to defendant's argument, the limit of liability of defendant is set at $50 for each head of stock. Counsel further argues that the evidence shows that about two weeks after the arrival of the cows at their destination they were sold for a total sum amounting to more than $50 per head. Counsel states in his brief that the contract of carriage "was pleaded and *offered* in evidence." He does not claim that it was *received* in evidence. The record discloses that a document, presumably the contract of carriage, was shown to plaintiff while he was on the witness-stand and plaintiff was asked if his signature appeared thereon. A question followed concerning the document, which was objected to by plaintiff. Then ensued some discussion, followed by the noon adjournment. ■ It does not appear from the record that the contract was offered or admitted in evidence. Therefore it cannot be considered in passing upon the right of defendant to a judgment of nonsuit. Moreover, plaintiff contends that under the terms of the contract of carriage defendant's liability was not limited to $50 for each animal. ■ Without passing upon the contentions of the respective parties in regard to the liability under the contract, it is sufficient to point out that plaintiff presented ample evidence to prove that many of the individual cows were worth less than $50 at the time of delivery at their destination and that the herd as a whole was at that time worth less than the sum of $1,750. The witness Otting,

after qualifying as an expert, testified that the reasonable market value of the animals was "about twenty-two and one-half dollars a head." The witness Zangle, also an expert, testified that the market value of one of the cows was $10 and of four others $21 each. It was shown in evidence that the value of the cows would have been from $120 to $135 per head if they had arrived at Hynes in good condition. On the evidence introduced by plaintiff he was entitled to judgment for the difference between the value of the animals in the condition in which they arrived and their value in good condition at the same time and place. This rule would not be changed by a showing that after their arrival they were fattened and treated by a veterinarian so that their value was enhanced. This appears to be conceded by counsel for defendant, since he says in his brief: "Under the law, the market value of the cows at any other time than the time of the delivery would be immaterial." In 10 Corpus Juris, 396, the rule is set forth: "Where goods intrusted to a carrier for shipment are injured through causes for which the carrier is responsible, the owner of the goods is entitled to recover the difference between the value of the goods at the time and place of delivery in an uninjured condition and their value in the depreciated condition in which they were delivered." This rule was followed by *Olcovich* v. *Grand Trunk Ry. Co.*, 179 Cal. 332 [176 Pac. 459], where it is said that the amount which will compensate the party aggrieved is the "value at the point of destination in case of total loss (Civ. Code, sec. 3316), and the depreciation in value at that point in case of partial loss, unless limited by contract."

The judgment is reversed.

Conrey, P. J., and York, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 3, 1928.

All the Justices present concurred.